**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

LONNIE WAYLON CRAIGHEAD,     )
                                  )
        Petitioner,          )
                                  )
v.                              )     Case No. CIV-15-882-R
                                  )
CARL BEAR, Warden,          )
                                  )
        Respondent.[1]   )

## REPORT AND RECOMMENDATION

Petitioner, Lonnie Waylon Craighead, appearing pro se, has filed a Petition for Habeas Corpus Relief pursuant to 28 U.S.C. § 2254 [Doc. No. 1] challenging the constitutionality of his state court conviction in Case No. CF-2011-458, District Court of Canadian County, State of Oklahoma. Respondent has filed a Response [Doc. No. 9] and Petitioner has filed a Reply [Doc. No. 12]. Respondent has also submitted the State Court Records [Doc. No. 11].[2]

The matter is now at issue and has been referred by United States District Judge David L. Russell for proposed findings and recommendations consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below it is recommended that the Petition be denied.

---

[1] Petitioner filed a Notice of Change of Address [Doc. No. 14] indicating he is currently incarcerated at Joseph Harp Correctional Center (JHCC). Therefore, the state officer having current custody of Petitioner is Carl Bear, Warden of JHCC. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts. The Clerk of Court is directed to substitute Carl Bear, Warden as the proper respondent in this matter.

[2] The State Court Records include the Transcript of Jury Trial Proceedings held on February 11-13, 2013, hereinafter "Tr.___." The State Court Records additionally include the Original Record on direct appeal of Petitioner's conviction to the OCCA, hereinafter "O.R. ___."

## PROCEDURAL HISTORY

Petitioner was convicted, after jury trial, of Endeavoring to Manufacture Methamphetamine, After Former Conviction of Two or More Felonies. Petitioner was sentenced to thirty years' imprisonment and a $50,000 fine.

Petitioner filed a direct appeal of his conviction to the Oklahoma Court of Criminal Appeals (OCCA). On May 23, 2014, the OCCA affirmed Petitioner's conviction but remanded as to one claim related to assessment of incarceration fees. *See* OCCA Summ. Op. [Doc. No. 9-3].

Petitioner next sought state post-conviction relief. On June 30, 2015, the OCCA affirmed the district court's denial of post-conviction relief and also denied Petitioner's motion to expand the record. *See* OCCA Post-Conviction Order [Doc. No. 9-9].

## GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner then instituted the present action. He brings the following Sixteen Grounds for federal habeas corpus relief:

- Ground One: Prosecutorial misconduct unconstitutionally lessened the State's burden of proof;

- Ground Two: The evidence was insufficient to establish Petitioner's dominion and control as necessary to support the elements of the crime charged;

- Ground Three: Petitioner was subjected to an illegal arrest, detention and search and seizure in violation of his Fourth Amendment rights;

- Ground Four: The waiver of Petitioner's Miranda rights was invalid resulting in a violation of Petitioner's Fifth Amendment privilege against self-incrimination;

- Ground Five: Admission of Petitioner's unrecorded statements made during the course of a custodial interrogation violated his Fifth and Fourteenth Amendment due process rights;

- Ground Six: Prosecutorial misconduct deprived Petitioner of a fundamentally fair trial and resulted in the imposition of an excessive sentence;

- Ground Seven: The admission of prejudicial evidence during second-stage proceedings violated Petitioner's Fifth and Fourteenth Amendment due process rights;

- Ground Eight: The evidence of Petitioner's prior convictions was insufficient to support the sentence enhancement;

- Ground Nine: Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel;

- Ground Ten: Petitioner's sentence is excessive in violation of the Eighth Amendment;

- Ground Eleven: The state district court improperly assessed incarceration fees;

- Ground Twelve: Cumulative error deprived Petitioner of a fundamentally fair trial;

- Ground Thirteen: Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel based on trial counsel's failure to obtain DNA testing and refusal to let Petitioner testify at trial;

- Ground Fourteen: Petitioner was denied a fundamentally fair trial due to prosecutorial misconduct resulting from presentation of coached and perjured testimony and a failure to disclose deals reached with Petitioner's co-defendants;

- Ground Fifteen: Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel; and

- Ground Sixteen: Petitioner's due process and equal protection rights have been violated because the state courts have refused to rule on Petitioner's motion for DNA testing.

Petitioner raised Grounds One through Twelve on direct appeal. He raised grounds Thirteen through Fifteen in state post-conviction proceedings. Respondent concedes the instant Petition is timely filed and Grounds One through Fifteen are exhausted. But Respondent contends the final claim raised in Ground Sixteen is "technically unexhausted." *See* Resp. at p. 87.[3] Nonetheless, Respondent contends the claim can be denied on the merits. *See id.* (*citing* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

---

[3] Citations to the parties' submissions reference the Court's ECF pagination.

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## *STANDARD OF REVIEW*

Petitioner's grounds for habeas relief, adjudicated on the merits by the OCCA, are governed by the standards of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[4] "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, -- U.S. --, 134 S.Ct. 10, 16 (2013).

Pursuant to the AEDPA, this Court may grant habeas relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2244(d)(1), (2). A state-court decision is contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent." *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016) (internal quotation marks omitted). "A state-court decision is an 'unreasonable application' of Supreme Court precedent if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular

---

[4] "An adjudication on the merits occurs when the state court resolves the case on substantive grounds, rather than procedural grounds." *Boyle v. McKune*, 544 F.3d 1132, 1137 (10th Cir. 2008) (citation omitted).

prisoner's case.'" *Fairchild v. Trammell*, 784 F.3d 702, 711 (10th Cir. 2015) (*quoting Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)).

"Review of a state court's factual findings under § 2254(d)(2) is similarly narrow." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016). Factual findings will not be unreasonable merely because on habeas review the court "would have reached a different conclusion in the first instance." *Brumfield v. Cain*, -- U.S. --, 135 S.Ct. 2269, 2277 (2015) (citation omitted). Instead, the court must defer to the state court's factual determinations so long as "reasonable minds reviewing the record might disagree about the finding in question." *Id.*

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, -- U.S. --, 136 S.Ct. 1149, 1151 (2016) (internal quotation marks and citation omitted). "The state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and citation omitted).

## *DISCUSSION OF CLAIMS RAISED ON DIRECT APPEAL*

I.     <u>**Ground One – Prosecutorial Misconduct**</u>

In Ground One, Petitioner brings a claim of prosecutorial misconduct. He contends the prosecution "sought to lessen the State's burden of proof" and violated his constitutional right to the presumption of innocence and the requirement that his guilt be proven beyond a reasonable doubt. He cites the following specific conduct: (1) during voir dire, the prosecutor told the jury that "if they were witness[es], not jurors[,] they would know beyond all doubt Mr. Craighead was guilty; and (2) during closing argument, the prosecutor made several improper remarks intended

to shift the burden of proof. *See* Pet. at p. 6. Petitioner claims the OCCA's determination of this issue was "clearly contrary to state and federal law." *Id.*[5]

### A.    OCCA Decision

On direct appeal, the OCCA rejected this claim finding that "alleged instances of prosecutorial misconduct did not operate to deprive [Petitioner] of his right to a fair trial by lessening the State's burden of proof regarding the presumption of innocence nor did the comments in closing argument shift the burden of proof from the State onto the defense." *See* OCCA Summ. Op. at p. 2 (citation omitted). The OCCA further found that "[n]one of the comments complained of were met with objection at trial and none of the comments rose to the level of plain error." *Id.* (citation omitted). The determination reached by the OCCA is entitled to AEDPA deference. *See Douglas v. Workman*, 560 F.3d 1156, 1178-1179 (10th Cir. 2009) (addressing deference given to OCCA's plain error review of prosecutorial misconduct claims); *see also Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009) (where OCCA makes a merits decision denying a prosecutorial misconduct claim, the court, on habeas review, must "assess this decision through AEDPA's forgiving lens.").

### B.    Clearly Established Federal Law

Ordinarily, "[h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." *Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 642-

---

[5] To the extent in this, and other grounds raised, Petitioner premises his right to habeas relief on alleged violations of state law, such grounds are not cognizable in this federal habeas proceeding. It is well established that "[f]ederal habeas relief is not available for state law errors" but "is limited to violations of federal constitutional rights." *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000) (*citing Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

48 (1974)). However, "[w]here prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence or privilege against self-incrimination, a habeas petitioner need not establish the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." *Torres v. Mullin*, 317 F.3d 1145, 1158 (10th Cir. 2003). To make such a determination, the court must consider "all of the surrounding circumstances, including the strength of the state's case." *Malicoat v. Mullins*, 426 F.3d 1241, 1255 (10th Cir. 2005).

### C.      Analysis

#### 1.      Voir Dire Comments by the Prosecutor

During voir dire, the prosecutor discussed with the jury the State's burden of proof. Tr. Vol. I at 35-39. The prosecutor began by stating: "The burden of proof in this case, in all criminal cases, is beyond a reasonable doubt." *Id*. at 35. After a thorough discussion, the prosecutor stated the following, which includes the specific remarks challenged by Petitioner:

> MR. MURREY:      Okay. Good. So the point of all this is all I want to get across to you is *there's a difference between beyond a reasonable doubt and beyond all doubt whatsoever*. In fact, if you knew beyond all doubt whatsoever whether a person was innocent or guilty, you wouldn't be in the jury, you would be on the witness stand, wouldn't you?
>
> (Nodding heads)
>
> MR. MURREY:      You would have to have some personal information to be that sure; correct?
>
> (Nodding head)
>
> MR. MURREY:      Okay.

*Id*. at 38-39 (emphasis added).

Petitioner contends the prosecutor's remarks implicitly told the jury that the State's witnesses knew beyond all reasonable doubt that Petitioner was guilty and, consequently, deprived him of the presumption of innocence. But considered in proper context, the prosecutor's remarks neither mischaracterized nor negated the State's burden of proof. Instead, the prosecutor simply explained to the jury the difference between "beyond a reasonable doubt" and "beyond all doubt whatsoever." The Tenth Circuit has rejected constitutional challenges to similar prosecutorial remarks. *See, e.g., Thornburg v. Mullin*, 422 F.3d 1113, 1130 (10th Cir. 2005) ("[T]o state that 'beyond a reasonable doubt' does not mean beyond 'a shadow of a doubt or all doubt' was not a constitutional violation"); *Gordon v. Ward*, 118 F. App'x 434, 436 (10th Cir. 2004) (giving AEDPA deference to OCCA's determination that "a prosecutor's comments during voir dire that 'reasonable doubt' does not mean 'beyond a shadow of a doubt' or 'beyond all doubt' does not constitute plain error" and denying habeas relief because state court determination was not contrary to or an unreasonable application of clearly established federal law). Therefore, the prosecutor's remarks did not render Petitioner's trial fundamentally unfair or so prejudice Petitioner's right to a presumption of innocence as to effectively deny Petitioner that constitutional right. Petitioner fails to demonstrate the OCCA's adjudication of this issue is contrary to or an unreasonable application of clearly established federal law. This claim, therefore, should be denied.

### 2. Closing Argument

Petitioner also claims the prosecutor made "several" improper remarks during closing argument. On direct appeal, Petitioner identified the following remarks in support of this claim:

- Individually, each one of these facts is very suggestive of Lonnie Craighead's guilt. Together, they have a collective force that cannot be ignored, they can not (sic) be shifted aside, and *you certainly haven't received any evidence from the defense that has shifted it to the side* . . . .

Once the State has presented that quantum of evidence, unless you hear something that in your opinion lowers that certainty, your verdict is clear. I ask you, *what have you heard that has shifted any of this evidence*? *See* Br. of Appellant [Doc. No. 9-1] at p. 20 (*citing* Tr. Vol. III at p. 15) (emphasis added).

- There has been *no evidence brought to you that can shift aside what the State has presented. None. Even the defense's best witness can't get them to a not guilty verdict. They've given you nothing to rely on*. They can't even come close to what the State has given you. *See id*. (*citing* Tr. Vol. III at p. 19) (emphasis added).

- *The defense has the same power to subpoena witnesses as the State does*. If Lonnie knows who that person is, they could have got him here. I didn't see anyone who admitted that they were buying pseudo from Lonnie. If the defense wanted to interrogate Dustin Stokes about what he had to do with any of this, they could have got him here. *If they think that's what would have exonerated Lonnie*, they could have done it. They could have subpoenaed him just like we could have. *Id*. at p. 21 (*citing* Tr. Vol. III at p. 32) (emphasis added).

- They didn't subpoena anyone Lonnie was selling to, they didn't subpoena Dustin Stokes, *they didn't get you anyone who could actually offer you evidence of his innocence*. *Id*. (*citing* Tr. Vol. III at p. 35) (emphasis added).

In proper context, and in view of the closing arguments as a whole, these comments did not so infect the trial proceedings so as to render Petitioner's resulting conviction a denial of due process.[6] It was proper for the prosecutor to remark on the testimony of the witnesses and draw reasonable inferences from that testimony. *See Thornburg*, 422 F.3d at 1131 ("A prosecutor may comment on and draw reasonable inferences from evidence presented at trial.") (citation omitted). Moreover, it was proper for the prosecution to comment, during rebuttal argument, on Petitioner's failure to present evidence of his innocence. The record demonstrates the prosecutor commented

---

[6] As Respondent points out, the first two sets of bulleted statements occurred during the State's "first" closing argument (i.e., not during rebuttal argument) and Petitioner has omitted parts of the prosecutor's remarks. When the remarks are read in their entirety, it is clear the prosecutor did not attempt to shift the burden of proof but repeated the State's obligation to prove Petitioner's guilt beyond a reasonable doubt. *See, e.g*., Resp. at p. 13 (*citing* Tr. Vol. III at p. 19) ("They can't even come close to what the State has given you, *and what the State has given you is evidence beyond a reasonable doubt*.") (emphasis added).

on Petitioner's failure to call witnesses or present testimony and not on Petitioner's failure to testify. *Compare Pickens v. Gibson*, 206 F.3d 988, 999 (10th Cir.2000) (stating that a prosecutor may not indirectly comment on the defendant's failure to testify by discussing "uncontroverted" evidence where that evidence could only be explained by the accused as such remarks would constitute an indirect comment on the defendant's failure to testify, but further stating that a prosecutor is otherwise free to comment on a defendant's failure to call certain witnesses or present certain testimony).

As Respondent notes, the prosecutor responded to arguments made during defense counsel's closing, implicating Dustin Stokes as the person responsible for the crime, and asserting as a theory of defense that although Petitioner was selling pseudoephedrine for profit, he was not manufacturing methamphetamine. *See* Resp. at pp. 15-16 (*citing* Tr. Vol. III at 25-26, 27). It was proper for the prosecutor to do so. *Cf. Delgado v. Barreras*, No. 97-2007, 1997 WL 785525 at *2 (10th Cir. Dec. 22, 1997) (unpublished op.) (no prosecutorial misconduct where prosecutor's remarks were not a direct statement on the presumption of innocence and remarks were in response to defense counsel's comments during closing argument). Finally, as Respondent points out, the jury was properly instructed as to the State's burden of proof, *see* Resp. at p. 16 (*citing* O.R. at 211), and the jury is presumed to have followed this instruction. *See Crawley v. Dinwiddie*, 584 F.3d 916, 918 n. 2 (10th Cir. 2009). In sum, the OCCA's determination of this issue is entitled to AEDPA deference and Petitioner has not demonstrated that determination is contrary to or an unreasonable application of clearly established federal law. Ground One of the Petition should be denied.

**II.** **Ground Two – Sufficiency of the Evidence**

Petitioner claims in Ground Two of the Petition that the evidence at trial was insufficient to establish "dominion and control in order to convict Mr. Craighead of endeavoring to manufacture." *See* Pet. at p. 8.

**A.** **OCCA Decision**

The OCCA reviewed this claim applying clearly established Supreme Court precedent. *See* OCCA Summ. Op. at p. 3 (*citing Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). The OCCA concluded that "[a] rational trier of fact could have found from the strong circumstantial evidence presented at trial that [Petitioner] knowingly and intentionally endeavored to manufacture methamphetamine." *See* OCCA Summ. Op. at p. 3

**B.** **Clearly Established Federal Law**

Pursuant to *Jackson*, the OCCA had to decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2064 (2012) (internal quotation marks and citation omitted).

The sufficiency of the evidence inquiry requires application of the substantive elements of the crime under Oklahoma law. *Jackson*, 443 U.S. at 324, n. 16 (The standard for sufficiency of

the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

### C. Analysis

The jury was correctly instructed on the elements of Endeavoring to Manufacture a Controlled Dangerous Substance as follows:

First, knowingly or willingly

Second, endeavoring

Third, to manufacture

Fourth, the controlled dangerous substance of methamphetamine.

*See* O.R. at 218; *see also* Okla. Stat. tit. 63, § 2-401(G). The jury was further instructed that "[e]ndeavoring means any effort to do or accomplish the evil purpose that the law was enacted to prevent." O.R. at 219. And, the jury was instructed that "[m]anufacturing" means "[p]roduction, preparation, propagation, compounding, or processing a controlled dangerous substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis; or a combination of extraction and chemical synthesis." *Id.*

Petitioner argues that the evidence was insufficient to establish his "dominion and control." *See* Pet. at p. 8. Petitioner's briefing before the OCCA on direct appeal clarifies that Petitioner contends although he was present at the Stokes' residence, he had no knowledge of the existence of a methamphetamine lab in the garage.

Under Oklahoma law, "dominion and control over the thing possessed" can be established by circumstantial evidence. *White v. State*, 900 P.2d 982, 986 (Okla. Crim. App. 1995). "Moreover, possession may be either actual or constructive, and need not be exclusive as long as there is proof that the defendant knowingly and willfully shared the right to control the dangerous

substance." *Id.* (internal quotation marks and citation omitted). Additionally, "[w]hen a controlled dangerous substance is not found on the accused but on premises to which several persons have access, possession cannot be inferred simply because the drugs were found on the premises, but the State must introduce additional facts from which it fairly can be inferred that the accused had dominion and control over the seized substance." *Doyle v. State*, 759 P.2d 223, 225 (Okla. Crim. App. 1988) (citations omitted). "The State must introduce some link or circumstances in addition to the presence of the controlled drug which indicates the accused's knowledge and control. Absent this additional factor, the evidence is insufficient to support a conviction." *Id.*

Here, without citing specific evidence, the OCCA relied on "strong" circumstantial evidence of Petitioner's guilt. Respondent points to the following circumstantial evidence: (1) Petitioner admitted to methamphetamine use and his last use was just a few days prior to his arrest (Tr. Vol. I at p. 196, 198); (2) Petitioner admitted buying pseudoephedrine and selling it to "smurfers" whom he believed to be using it to make methamphetamine (Tr. Vol. I at 189-96); and (3) both officers investigating the scene noticed an unmistakable odor of a methamphetamine lab upon their arrival and when first encountering Petitioner (Tr. Vol. I at pp. 105, 185-86). *See* Resp. at p. 21. Additionally, evidence allowed the jury to reasonably infer that Petitioner was on the premises for a time sufficient to allow him to "cook" the methamphetamine. Tr. Vol. II at p. 37. Mrs. Stokes testified that she gave Petitioner a box of ninety-six pseudoephedrine pills because she wanted methamphetamine. Tr. Vol. II at p. 38. And finally, Officer Bondurant testified that he found a weight for calibrating scales on Petitioner during his pat-down search when he first came into physical contact with Petitioner. Tr. Vol. I at pp. 178-79. All of this evidence, even if circumstantial, was sufficient to allow the jury to find beyond a reasonable doubt the essential elements of the crime charged, including Petitioner's dominion and control. Applying AEDPA's

deferential standard of review, Petitioner has failed to meet his burden of demonstrating the OCCA's determination of this issue was contrary to or an unreasonable application of *Jackson*. Ground Two of the Petition should be denied.

## III.     Ground Three – Illegal Arrest, Detention and Search and Seizure

Petitioner next claims that "[t]he illegal arrest, detention, and search & seizure of Craighead requires dismissal of this case . . . ." *See* Pet. at p. 9. In support, Petitioner claims Officer Bondurant arrested and searched him without a search warrant and without probable cause. He contends, therefore, that the search was unlawful. He further contends he was only responsible for items in his vehicle, parked on the property, not for any evidence outside his vehicle. *Id.*

### A.     OCCA Decision

The OCCA rejected this claim on direct appeal finding as follows:

> [T]he authorities had a particularized and objective basis for suspecting that [Petitioner] was involved in the criminal and potentially volatile activity of operating a meth lab. Under the circumstances of this case, Bondurant and Glancy had reasonable suspicion to detain [Petitioner] and the extent of this detention was justified and not unreasonable. As the seizure was lawful and the statement was informed and voluntarily made, there was no reason to suppress this evidence. We also find that there was no evidence presented at the hearing on the motion to suppress supporting the conclusion that [Petitioner] had a personal expectation of privacy in the place searched. We find, accordingly, that there was no plain error in the trial court's ruling on the motion to suppress nor do we find that the trial court abused its discretion in denying the motion to suppress.

*See* OCCA Summ. Op. at pp. 3-4 (citations omitted).

### B. Applicable Federal Law[7]

Habeas review of Fourth Amendment claims is precluded where, as here, the petitioner had a full and fair opportunity to litigate those claims in state court proceedings. *Stone v. Powell*, 428 U.S. 465, 494 (1976). The opportunity for full and fair litigation "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim," a "full and fair evidentiary hearing contemplated by *Townsend [v. Sain*, 372 U.S. 293 (1963)]," and state court "recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir.1978).

### C. Analysis

Petitioner makes no claim that he was denied such a full and fair opportunity. Instead, he simply reasserts his Fourth Amendment claim and contends it was wrongly decided by the state courts. His claim, therefore, should be denied. *See Cannon v. Gibson*, 259 F.3d 1253, 1264 (10th Cir. 2001) (denying habeas petitioner's Fourth Amendment claim because the challenge "was more akin to an attack on the merits of the OCCA decision rather than a charge that the OCCA willfully misapplied constitutional law").

Moreover, the record demonstrates Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim. Such an opportunity exists when the claims are presented either in the state district or appellate courts. *See Webster v. Attorney General of the State of Oklahoma*, 213 F. App'x 664, 667 (10th Cir. 2007) (*citing Stone*, 428 U.S. at 494 n. 37). Here, Petitioner had both opportunities. The trial court conducted a hearing on Petitioner's motion to

---

[7] AEDPA's clearly established federal law requirement does not apply to this claim. As discussed *infra*, habeas review of such claims is barred under well-established prudential principles and the Court, therefore, need not reach the merits of the Fourth Amendment claim to decide whether the state courts' resolution of the claim was contrary to or an unreasonable application of Supreme Court precedent.

suppress and ultimately denied the motion. *See* State Court Record, Motion Hearing Tr. (March 27, 2012).[8] Additionally, the OCCA, through its plain error review, made colorable application of governing Fourth Amendment standards and denied Petitioner's claim. *Cf. Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment violations pursuant to *Stone* where petitioner had moved to suppress the evidence resulting from an alleged unlawful seizure, objected to the admission of this evidence at trial, and presented the issue to the OCCA on direct appeal); *Harmon v. McCollum*, 652 F. App'x 645, 652 (10th Cir. 2016) (finding OCCA's review of Fourth Amendment claim for plain error constituted full and fair consideration for purposes of applying *Stone* to bar federal habeas review) (citations omitted). Ground Three of the Petition, therefore, should be denied.

## IV.   **Ground Four – Fifth Amendment Violation Premised on Invalid Waiver of *Miranda* Rights**[9]

In Ground Four, Petitioner claims he did not voluntary waive his *Miranda* rights and his statements to law enforcement were coerced. As a result, he claims a violation of his Fifth Amendment privilege against self-incrimination.[10] He further claims that without the admission

---

[8] Respondent fails to address the fact that at the conclusion of the suppression hearing, the state district court initially granted the motion to suppress. *See id*. at pp. 23-25. The State then moved for reconsideration of that ruling. *See* O.R. at pp. 38-45. On April 5, 2012, the state district court granted the State's motion for reconsideration. *See* docket in *State of Oklahoma v. Craighead*, Case No. CF-2011-458, District Court of Canadian County, State of Oklahoma, Minute Entry dated April 5, 2012, available at www.oscn.net.

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[10] "As a general rule, *Stone* does not apply to Fifth Amendment *Miranda*-based challenges." *Romero v. Jordan*, 56 F. App'x 886 (10th Cir. 2003) (*citing Withrow v. Williams*, 507 U.S. 680, 683 (1993)).

of his statements at trial, "it's unlikely the state could have obtained a conviction at trial." *See* Pet. at p. 11.

In support of this claim, Petitioner relies on the fact that no "written waiver of rights form was introduced into evidence, nor was any recording made of a verbal waiver of rights." *Id.* Based on the absence of any written or recorded waiver, Petitioner claims the State "failed to prove [he] voluntarily waived his Miranda rights [and] was coerced into giving a statement." *Id.*

### A. OCCA Decision

The OCCA addressed this claim as follows:

> We note in Proposition IV, that when considering whether a statement is voluntary, we look at all the circumstances to find whether the statement was made pursuant to a free and unconstrained choice, or whether it resulted from coercion, threats, violence, or promises. The record is sufficient to establish that [Petitioner] was properly advised of his rights under *Miranda* and that he made a knowing and voluntary decision to speak with the investigator. [Petitioner's] statement was not taken in violation of his Fifth Amendment rights.

*See* OCCA Summ. Op. at p. 4 (citation omitted).

### B. Clearly Established Federal Law

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const. amend V. *Miranda* rights are designed to protect this Fifth Amendment right by ensuring "proper safeguards" during "in-custody interrogation." *Miranda*, 384 U.S. at 467. Once advised of *Miranda* rights, an accused may validly waive those rights provided the waiver is knowing and voluntary and not the result of threats or coercion. *Berghius v. Thompkins*, 560 U.S. 370, 382 (2010). Whether a waiver is knowing and voluntary is determined based on the totality of circumstances. *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (*Miranda* rights are properly waived if "the totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension").

## C.     Analysis

Notably, Petitioner's entire claim is premised on the lack of any written or recorded waiver. However, "[w]here a defendant's actions clearly demonstrate that he has voluntarily waived his *Miranda* rights, his failure to sign a waiver of rights form does not render his waiver involuntary." *United States v. Gell-Iren*, 146 F.3d 827, 830 (10th Cir. 1998); *see also Mantzke v. Province*, 351 F. App'x 293, 295 (10th Cir. 2009) (finding habeas petitioner's claim that "he never knowingly and intelligently waived his *Miranda* rights" based only on "argument that police testimony alone is insufficient evidence of a *Miranda* waiver" was "foreclosed" by *Gell-Iren*).  Indeed the Supreme Court has held that an officer need not obtain an express waiver of a defendant's right to remain silent under *Miranda* so long as the prosecution can demonstrate the *Miranda* warning was given and it was understood by the accused.  *See Berghius*, 560 U.S. at 384 ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.").[11]

Moreover, nothing in the record supports Petitioner's claim that his waiver of *Miranda* rights or his statements to law enforcement were not knowing and voluntary. The trial court conducted a *Jackson v. Denno*[12]  hearing and ruled at the end of the hearing as follows: "I find there is no testimony indicating that Mr. Craighead was in custody at this time.  I didn't see or hear any evidence of any pressure, intimidation, or force being applied, and I'm satisfied at this time

---

[11] Petitioner's habeas claim fails, fundamentally, due to his inability to cite any clearly established federal law requiring that his waiver of Miranda rights be written or recorded.  As discussed infra, in the context of the claim raised in Ground Five, a lack of clearly established federal law is a threshold inquiry and the absence of any such law precludes habeas relief.

[12] *Jackson v. Denno*, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

the statements that were made were voluntarily made." *See* State Court Record, *Jackson-Denno* Hearing Tr. (Jan. 20, 2012) at p. 22. These factual findings are entitled to a presumption of correctness and are unrebutted by Petitioner. *See* 28 U.S.C. § 2244(e)(1). Additionally, at trial Officer Glancy testified that he verbally advised Petitioner of his *Miranda* rights, Petitioner acknowledged that he understood those rights and then Petitioner indicated that he was willing to speak with Officer Glancy. Tr. Vol. I at pp. 188-89. The record is void of any evidence of police coercion.

The OCCA correctly looked to "the totality of the circumstances" to determine whether Petitioner's interactions with law enforcement were voluntary. The OCCA specifically found that Petitioner was advised of his rights under *Miranda* and knowingly and voluntarily made the decision to speak to law enforcement. The Court finds, therefore, that Petitioner has failed to demonstrate the OCCA's adjudication of this issue is contrary to or an unreasonable application of clearly established federal law. Accordingly, it is recommended that Ground Four of the Petition be denied.[13]

## V.     Ground Five – Admission of Unrecorded Custodial Interrogation

As his fifth ground for relief, Petitioner challenges the admission of his "custodial interrogation" at trial as a violation of his due process rights. *See* Pet. at p. 13. Petitioner claims the statement was "unrecorded and unreliable" and the corroborating evidence was weak. *Id*.

### A.     OCCA Decision

The OCCA rejected this claim on direct appeal finding "no plain error in the admission of [Petitioner's] statement based upon the argument that it was unrecorded and therefore unreliable."

---

[13] Because the Court finds no Fifth Amendment violation, the Court need not address Petitioner's additional assertion that the admission of his statements was not harmless.

*See* OCCA Summ. Op. at p. 4. The OCCA further rejected Petitioner's claim that "this Court should require that all custodial interrogations be recorded." *Id*. at pp. 4-5.

As the OCCA's Summary Opinion makes clear, there is no requirement under Oklahoma law that custodial interrogations be recorded. *See id*. On direct appeal, Petitioner acknowledged that no requirement currently exists in Oklahoma. *See* Br. of Appellant at p. 40 ("Based on this nationwide trend of mandated recording of custodial interrogations, it is the position of Appellant *this should also be the law in Oklahoma*") (emphasis added); *see also id*. ("[T]he unrecorded police custodial interrogation, like the one in this case, *should not be admissible in Oklahoma*.") (emphasis added). Plaintiff points to no other state law that rendered the testimony of Officer Glanz concerning Petitioner's statements made during his custodial interrogation inadmissible. Therefore, any due process challenge to the admission of the statements, as contrary to state law, is unavailing.

### B. Lack of Clearly Established Federal Law

Most importantly, however, Petitioner cites no clearly established federal law requiring that custodial interrogations be recorded in order to be admissible. As Respondent notes, Petitioner's direct appeal brief canvasses at length the developing law in this area with respect to the states, but fails to cite any federal law, much less clearly established Supreme Court precedent, rendering admission of unrecorded statements unconstitutional. The threshold inquiry on habeas review under § 2254(d)(1) is "'whether there exists clearly established federal law, an inquiry that focuses exclusively on holdings of the Supreme Court.'" *Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) (*quoting Hooks v. Workman (Victor Hooks)*, 689 F.3d 1148, 1163 (10th Cir. 2012)). "'The absence of clearly established federal law is dispositive under § 2254(d)(1).'" *Id*. (*quoting House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008)). The claim raised in Ground Five,

therefore, "fails at the threshold for lack of clearly established federal law, and [the Court] need not evaluate the OCCA's resolution of it." *Hooks*, 689 F.3d at 1176.

**VI.**     **Ground Six – Prosecutorial Misconduct**

Petitioner claims in Ground Six of the Petition that prosecutorial misconduct deprived him of a fundamentally fair trial and resulted in the imposition of an excessive sentence. Petitioner cites four instances of prosecutorial misconduct: (1) the prosecutor used improper impeachment tactics when cross-examining Karri Craighead, Petitioner's wife; (2) the prosecutor improperly vouched for the credibility of the State's witnesses; (3) the prosecutor misstated facts not in evidence; and (4) the prosecutor improperly sought to invoke sympathy and societal alarm from the jury.

**A.**     **OCCA Decision**

The OCCA rejected this claim on direct appeal finding "[m]ost comments at issue" to be "proper." *See* OCCA Summ. Op. at p. 5. The OCCA further determined that "given the State's evidence against [Petitioner], any inappropriate comments did not deprive him of a fair trial or affect the jury's finding of guilt or assessment of punishment." *Id.*

**B.**     **Clearly Established Federal Law**

Petitioner does not claim that prosecutorial misconduct prejudiced a specific constitutional right, but rather that he was denied a fundamentally fair trial. *See Donnelly*, 416 U.S. 637, 643 (1974); *see also Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005). As previously set forth, such a claim warrants habeas relief only if the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

The fundamental fairness inquiry requires an examination of the entire proceedings. *Id.*; *see also Patton*, 425 F.3d at 811 ("This determination may be made only after taking notice of all the surrounding circumstances, including the strength of the state's case." (internal quotation marks and citation omitted)). As the Tenth Circuit has instructed, "[t]o view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (internal quotations marks and citation omitted).

## C.    Analysis

As set forth, the OCCA rejected Petitioner's claim of prosecutorial misconduct. While the OCCA did not enumerate each instance of prosecutorial misconduct, it concluded that the comments at issue did not deprive Petitioner of a fair trial. The determination reached by the OCCA is entitled to AEDPA deference. *See Matthews*, 577 F.3d at 1186 (where OCCA makes a merits decision denying a prosecutorial misconduct claim, the court, on habeas review, must "assess this decision through AEDPA's forgiving lens.").

### 1.    Improper Impeachment Tactics

On cross-examination of Karri Craighead, the prosecutor asked several questions challenging the veracity of Mrs. Craighead's testimony based on the testimony of other witnesses. When Mrs. Craighead's response differed from their testimony, the prosecutor would ask Mrs. Craighead whether the other witnesses were lying. *See* Br. of Appellant at pp. 41-42 (*citing* Tr.

Vol. II at 155, 155-56 and 157).[14]  During closing argument, the prosecutor pointed out how Mrs. Craighead's testimony differed and that the jury could choose to believe her or choose to believe all the other witnesses.  Tr. Vol. III at 34-36.

Petitioner fails to demonstrate the prosecutor engaged in misconduct.  "[R]eferring to testimony as a lie is not per se prosecutorial misconduct."  *Bland v. Sirmons*, 459 F.3d 999, 1025 (10th Cir. 2006) (citation omitted).  "On the contrary, it is permissible for the prosecution to comment on the veracity of a [witnesses'] story."  *Id*. (citation omitted).  Therefore, claims of prosecutorial misconduct have been rejected "where the prosecution referred to a [witness] as a liar on account of irreconcilable discrepancies between the [witness's] testimony and other evidence in the case."  *Id*. (citation omitted).  The OCCA's determination that this claim of prosecutorial misconduct lacked merit was not contrary to or an unreasonable application of clearly established federal law.

Petitioner further claimed on direct appeal that the State used improper impeachment tactics by playing a recorded telephone conversation between Petitioner and Karri Craighead.  The record establishes that Mrs. Craighead was present throughout trial and listened to the testimony of all the State's witnesses prior to the defense calling her to testify as a rebuttal witness.  Tr. Vol.

---

[14] For example, Mrs. Craighead testified that her cell phone was on her person, "in the pocket of [her] shirt" at the time the police arrived.  Tr. Vol. II at p. 143.  But Officer Bondurant testified that her cell phone was in the garage and that she asked him to retrieve it for her from the garage.  Tr. Vol. I at pp. 134-136.  On cross-examination of Mrs. Craighead, the prosecutor asked the following question:

Q.  And [Officer Bondurant's] also mistaken or lying about getting your cell phone out of the garage?

A.  Yes.  My phone was on my person.

Tr. Vol. II at p. 155.

II at 137-165. The night before her testimony, she made a telephone call to Petitioner. Because Petitioner was incarcerated, the phone call was recorded. The State played portions of the phone call to the jury for purposes of establishing Mrs. Craighead's bias.

On direct appeal, Petitioner claimed the recording of the telephone call included "a very graphic sexual discussion between Mr. and Mrs. Craighead, geared solely to humiliate both of them in front of the jury." *See* Br. of Appellant at p. 43. Petitioner further claimed the recording included "prejudicial information about [Petitioner's] other charges and different probations." *See id*.

The Court finds no prosecutorial misconduct. As the prosecutor argued to the state district court, the recording was relevant to show the strong relationship between Karri Craighead and Petitioner, and her "clear bias toward [Petitioner]." Tr. Vol. II at p. 152. Because the prosecutor introduced the evidence for proper impeachment purposes, this claim lacks merit. Additionally, the record demonstrates the parties agreed to "mute out" any reference to Petitioner's other charges and probations. Tr. Vol. II at p. 153.[15] Petitioner has failed to carry his burden to show the OCCA's adjudication of this issue is contrary to or an unreasonable application of clearly established federal law.

### 2. Vouching for Credibility of the State's Witnesses

Next, Petitioner claims the prosecutor improperly vouched for the credibility of the State's witnesses. Petitioner does not identify any particular witness in his Petition. However, on direct appeal to the OCCA, Petitioner premised this claim on the State's closing argument and statements

---

[15] The prosecutor specifically stated: "[t]here are portions of the tape where they discuss the defendant's probation, and in the event we play the tape, those parts have been muted." Tr. Vol. II at p. 151.

made about the testimony of Alicia Stokes. *See* Br. of Appellant at p. 44. The Court, therefore,

reviews that same conduct for purposes of Petitioner's habeas claim.

Petitioner identifies two instances of alleged impermissible vouching by the prosecutor –

both made during closing argument:

> You might wonder why you should believe Alicia Stokes. What does she got to
> gain by lying? Really, what does she have to gain? She's already made the deal
> that will dissolve her case. Part of that deal is to testify truthfully.

Tr. Vol. III at p. 11.

> . . . Alicia, the only credible eye witness you've seen. Who, by the way, contrary
> to what they want you to speculate on, has no reason to lie about this. Again, her
> case is nearly complete, she's already cut her deal . . . She told you with the DHS
> case, she's already poised to get full custody back as soon as her case is concluded.
> Her deal is done. Her course has run . . . She's got no reason left to lie . . . All she's
> got left now is to live up to the terms of her agreement and testify truthfully. That's
> what she did.

*Id*. at pp. 33-34.

"Argument or evidence is impermissible vouching only if the jury could reasonably believe

that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit

personal assurances of the witness' veracity or by implicitly indicating that information not

presented to the jury supports the witness' testimony." *Thornburg*, 422 F.3d at 1132 (quotation

marks and citation omitted). It is permissible for a prosecutor to direct the jury's attention to

evidence that tends to enhance or diminish a witness's credibility. *Id*.

The statements challenged by Petitioner do not constitute impermissible vouching. Instead,

the prosecutor's statements were directed toward the evidence presented and the jury's duty, as

instructed, to assess witness credibility. *See* O.R. at p. 215. Petitioner fails to demonstrate that

the OCCA's finding that these statements did not render his trial fundamentally unfair is contrary

to or an unreasonable application of Supreme Court precedent.

### 3. Misstating Facts Not in Evidence

Next, Petitioner claims the prosecutor misstated facts not in evidence. Again, Petitioner does not identify what facts support this claim in his Petition and so the Court turns to the direct appeal brief for development. Petitioner contends the prosecutor argued that Petitioner "assembled the equipment and other chemicals in the garage" and "began the chemical processes that would result in methamphetamine." *See* Br. of Appellant at p. 45 (*citing* Tr. Vol. III at p. 10). According to Petitioner, this argument goes beyond drawing inferences and instead, the prosecutor "resort[ed] to pure conjecture." *Id*.

This claim lacks merit. The charged offense at issue was Endeavoring to Manufacture Methamphetamine – which necessarily entails equipment, materials and procedures for manufacturing. The prosecutor's statement is based on reasonable inferences drawn from evidence establishing Petitioner's close proximity to the meth lab at the time of his arrest and his knowledge and other conduct related to the manufacture of methamphetamine. Because the prosecutor was permitted to draw reasonable inferences from the evidence presented, no misconduct occurred. *Thornburg*, 422 F.3d at 1131 ("A prosecutor may comment on and draw reasonable inferences from evidence presented at trial.") (citation omitted). Petitioner fails to demonstrate the OCCA's determination that these statements did not render his trial fundamentally unfair was contrary to or an unreasonable application of Supreme Court precedent.

### 4. Invoking Sympathy and Societal Alarm

Finally, Petitioner claims the prosecutor improperly sought to invoke sympathy and societal alarm from the jury based on the following statement: "It cannot be allowed to continue that more meth, more drugs, is produced and continues to float around the community." Tr. Vol.

III at p. 56.  The comment drew an objection from defense counsel and the trial court admonished the prosecutor.  *Id*. at pp. 56-57.

"While 'improper appeals to societal alarm' and requests for 'vengeance for the community to set an example' are unwarranted, they are also not the type of comments that the Supreme Court has suggested might amount to a due process violation." *Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994) (*quoting Darden v.Wainwright*, 477 U.S. 168, 181–82 (1986)); *see also Jones v. Gibson*, 206 F.3d at 959 ("An improper appeal to societal alarm typically does not amount to a denial of due process.").  Even if the statement challenged by Petitioner were improper, he has failed to meet the "particularly high" standard for granting habeas relief where, as here, no specific right is alleged to have been prejudiced.  *See Goudeau v. Dowling*, 601 F. App'x 703, 708 (10th Cir. 2015); *see also Smallwood*, 191 F.3d at 1275 (prosecutorial misconduct warrants habeas relief only if the conduct is "so egregious as to render the entire proceedings against the defendant fundamentally unfair").  When viewed in context of the entire trial, as required, *see Donnelly*, 416 U.S. at 645, and when coupled with the trial court's admonition, it is clear the prosecutor's statements did not render Petitioner's trial fundamentally unfair.  The OCCA's rejection of this claim of prosecutorial misconduct was neither contrary to, nor an unreasonable application of Supreme Court law.  Thus, habeas relief should be denied on this ground.

**VII.**     **Ground Seven – Admission of Prejudicial Evidence During Second-Stage Proceedings**

During second-stage proceedings, the prosecutor elicited testimony from Officer Bondurant, an investigator with the Canadian County Sheriff's Office, regarding Petitioner's prior felony convictions.  The testimony included information about Petitioner's suspended sentences as to those prior convictions. Tr. Vol. III at 46-54.  In addition, Officer Bondurant testified that he had been a witness at a revocation hearing as to one of those suspended sentences and provided

testimony about the arrest on the charges at issue here.  *Id*. at pp. 53-54.  Defense counsel's objection to the latter testimony was sustained by the trial court.  *Id*. at p. 54.  Petitioner claims the prosecutor improperly presented this prejudicial evidence.

## A.    OCCA Decision

Addressing this claim on direct appeal, the OCCA found as follows:

> [W]e find that the jury was not given inadmissible details about the nature of the crimes for which [Petitioner] was convicted as the State proved the prior convictions through testimony which basically gave the jury the same information they would have received if a Judgment and Sentence had been introduced to prove each prior conviction.  The jury was, however, improperly advised that [Petitioner] had received suspended sentences in the prior convictions.  The prosecutor should not have introduced evidence of the length of time served for a prior conviction.  Even so, [Petitioner] has failed to establish that this error was harmful under the facts of this case and therefore, no relief is required.

*See* OCCA Summ. Op. at p. 5 (citations omitted).

## B.    Clearly Established Federal Law

Petitioner's challenge to the admission of prejudicial evidence involves a matter of Oklahoma state law.  Habeas corpus relief cannot be granted on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results."  *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (quotation marks and citation omitted); *see also Maes v. Thomas*, 46 F.3d 979, 987 (10th Cir. 1995).  Relief is available only if the alleged error was "so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (alternation in original; quotation marks and citation omitted).  A fundamental fairness inquiry "is not subject to clearly definable legal elements" and, therefore, when in engaged in such inquiry on habeas review, a court must 'tread gingerly' and exercise 'considerable self-restraint.'"  *Duckett*, 306 F.3d at 999 (quotation marks and citation omitted).

Where a state court finds that an error is harmless, federal habeas courts must determine if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Littlejohn*, 704 F.3d at 833–34. This standard is mandated by the "[i]nterests of comity and federalism, as well as the State's interest in the finality of convictions that have survived direct review within the state court system." *Littlejohn*, 704 F.3d at 834. Habeas relief is available only if the reviewing court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *Davis v. Ayala*, -- U.S. --, 135 S.Ct. 2187, 2198-99 (2015) (*quoting O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

### C. Analysis

The Court has no grave doubts in this case. As Respondent notes, Petitioner received a sentence of thirty years even though the State sought as punishment a term of forty years' imprisonment. *See* Resp. at p. 50. The testimony of Officer Bondurant did not have a substantial and injurious effect on the jury's sentencing verdict. Relief should be denied as to Ground Seven.

## VIII. Ground Eight – Insufficiency of the Evidence as to Prior Convictions and Ground Ten – Excessiveness of Sentence

The claims raised in Grounds Eight and Ten of the Petition also relate to alleged sentencing error. In Ground Eight, Petitioner asserts that the State's evidence was insufficient to prove beyond a reasonable doubt his prior felony convictions for purposes of enhancement. In Ground Ten, Petitioner asserts that his sentence was excessive and should be modified.

### A. OCCA Decision

The OCCA rejected these claims on direct appeal finding as follows:

As to Proposition VIII, we note that finality of prior convictions may be established by circumstantial evidence, including the age of the conviction, the fact that it was entered upon a plea of guilty, and the absence of rebutting evidence by the defense.

We find that the evidence, when viewed in the light most favorable to the State, was sufficient to permit any rational trier of fact to find that the finality of [Petitioner's] prior convictions was established beyond a reasonable doubt.

\* \* \*

We find in Proposition X that [Petitioner] did not receive an excessive sentence under the circumstances of this case including allegations of trial error. A sentence within the statutory range will be affirmed on appeal unless, considering all the facts and circumstances, it shocks the conscience of this Court. As noted in discussion of the foregoing propositions, none of the alleged errors require reversal or other relief and cannot be used as a basis for modification here. [Petitioner] was convicted of endeavoring to manufacture methamphetamine after former conviction of four prior felonies, three of which were drug related. The sentence imposed does not shock the conscience of the Court.

*See* OCCA Summ. Op. at pp. 5-6 (citations omitted).

### B. Clearly Established Federal Law

The OCCA addressed Petitioner's sufficiency of the evidence challenge applying the *Jackson* standard As set forth above, *Jackson* requires this Court to construe the evidence in the light most favorable to the State, and ask whether any rational trier of fact could have found the State established Petitioner's prior convictions beyond a reasonable doubt.

With respect to Petitioner's challenge that his sentence is excessive, a habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Federal habeas review generally ends "once we determine the sentence is within the limitation set by statute." *Id.*; *see also Parker v. Evans*, 569 F. App'x 611, 617 (10th Cir. 2014)

("Mr. Parker claims his sentence is excessive under Oklahoma law but fails to identify any constitutional violation, which is the core predicate for federal habeas relief.").[16]

### C.     Analysis

Construing the evidence in the light most favorable to the State, any rational trier of fact could have concluded the State established beyond a reasonable doubt that Petitioner's prior convictions were final, for purposes of sentence enhancement. Officer Bondurant testified concerning the content of State's Exhibits 12-15, the Judgment and Sentences as to four of Petitioner's prior felony convictions. Those exhibits were not admitted. However, as the OCCA held, under Oklahoma law proof of prior felony convictions may be established by circumstantial evidence and the absence of rebutting evidence by the defense. *See* OCCA Summ. Op. at pp. 5-6 (*citing Cervantes v. State*, 556 P.2d 622, 627-28 (Okla. Crim. App. 1976)). Petitioner points to no contradictory evidence.[17]

Additionally, Petitioner fails to demonstrate his sentences fell outside the statutory range for the crime charged under Oklahoma law. Habeas relief, therefore is not warranted and Grounds Eight and Ten of the Petition should be denied.

---

[16] To the extent Petitioner claims that his sentence violates the Eighth Amendment due to its excessiveness, his claim fails. The Tenth Circuit has observed that: "Eighth Amendment challenges [based on an alleged excessive sentence] are extraordinarily difficult." *Holt v. Newton-Embry*, 560 F. App'x 724, 725-26 (10th Cir. 2014) (*citing United States v. Angelos*, 433 F.3d 738, 750-51 (10th Cir. 2006) (summarizing cases)). As noted, Petitioner's sentence is within the statutory range and less than the sentence sought by the State. *See* Tr. Vol. III at p. 57 (closing argument of prosecutor during second-stage proceedings suggesting that the jury impose a "40-year sentence"). Petitioner's case fails to present the extraordinary circumstances necessary to support an Eighth Amendment violation.

[17] Moreover, the Supreme Court has observed that the due process requirement that each element of an offense be proven beyond a reasonable doubt established by *In re Winship*, 397 U.S. 358 (1970), has not been extended "to proof of prior convictions used to support recidivist enhancements." *Dretke v. Haley*, 541 U.S. 386, 395 (2004). Thus, Petitioner's claim fails on this basis as well.

## IX.    <u>**Ground Nine – Ineffective Assistance of Trial Counsel**</u>

Petitioner claims in Ground Nine that trial counsel was ineffective, relying on the same issues he raised in Grounds One, Six, Seven and Eight.  In addition, Petitioner claims trial counsel was ineffective for failing to include as part of the trial record certain "slides with commentary" used by the prosecution during closing argument.  *See* Pet. at p. 17.

### A.    **OCCA Decision**

Relying on *Strickland v. Washington*, 466 U.S. 668 (1984), the OCCA concluded that "[Petitioner] was not denied his Sixth Amendment right to the effective assistance of counsel." *See* OCCA Summ. Op. at p. 6.

### B.    **Clearly Established Federal Law**

*Strickland* requires a showing of both deficient performance by counsel, i.e., that counsel's performance "fell below an objective standard of  and prejudice to the habeas petitioner as a result of the deficient performance.  *Id*. at 687-88.  This Court's review of counsel's performance is "highly deferential."  *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quotation omitted).  "To be deficient, the performance must be outside the wide range of professionally competent assistance.  In other words, it must have been completely unreasonable, not merely wrong."  *Hooks*, 606 F.3d at 723 (internal quotation marks and citations omitted); *accord, Gardner v. Galetka*, 568 F.3d 862, 874 (10th Cir. 2009).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" by indulging in a strong presumption counsel acted reasonably.  *Strickland*,

466 U.S. at 689. Petitioner bears a heavy burden of overcoming the presumption that counsel's actions were sound trial strategy. *Byrd*, 645 F.3d at 1168.

To establish prejudice, a habeas petitioner "must establish that but for counsel's errors, there is a reasonable probability 'the result of the proceeding would have been different.'" *Hooks*, 606 F.3d at 715 (*quoting Strickland*, 466 U.S. at 694). In other words, the petitioner must show "counsel's errors were so serious as to deprive [him] of a fair trial, whose result is reliable." *Strickland*, 466 U.S. at 693.

Because the OCCA reviewed the ineffective assistance of counsel claims on the merits, AEDPA deference applies. AEDPA review is "doubly deferential" when the claim at issue is one for ineffective assistance of counsel. *Woods*, 136 S.Ct. at 1151. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable, professional judgment" and on habeas review, the court must afford "both the state court and the defense attorney the benefit of the doubt." *Id.* (internal quotation marks and citations omitted).

### C.    Analysis

This Court has previously addressed the claims raised in Grounds One, Six, Seven and Eight and determined those claims lack merit. Necessarily, therefore, Plaintiff cannot establish the requisite prejudice that must exist to support a claim of ineffective assistance of trial counsel. *Strickland*, 466 U.S. at 687-88; *Dennis*, 222 F.3d at 1250 ("If the [underlying or constitutional] claims lack merit, [the petitioner] cannot claim prejudice from his attorney's failure to raise them at trial or on direct state appeal."). Applying AEDPA's doubly deferential standard, the OCCA's determination of the ineffective assistance of counsel claims is not contrary to or an unreasonable application of clearly established federal law and habeas relief should be denied as to these claims.

Similarly, Petitioner's claim that trial counsel should have required the prosecutor's slides used during closing argument to be included in the record is without merit. On direct appeal, Petitioner claims that "without those slides, Appellant cannot contest their trial use in this appeal." *See* Br. of Appellant at pp. 51-52. But Petitioner fails to articulate any basis for establishing prejudice as a result of the State's use of the slides. Instead, his claim is based on pure conjecture.

Moreover, as Respondent points out, trial counsel objected to use of the slides during closing argument on grounds it was confusing to the jury as to whether the slides were "part of the law or commentary." Tr. Vol. III. at p. 8. Once the prosecutor explained the slides were intended as commentary, defense counsel responded: "I'm not even trying to exclude them. If [the prosecutor] is willing to clarify [the slides are commentary] I don't have an objection to it, but I wanted to note my concern with that for that reason." *Id*. at p. 9. Under these circumstances, Petitioner fails to establish his trial counsel rendered constitutionally deficient and prejudicial performance. Ground Nine of the Petition should be denied.

## X.    Ground Eleven – Improper Assessment of Jail Fees

In Ground Eleven, Petitioner claims the state district court improperly assessed incarceration fees against him without the notice required by Oklahoma law and, therefore, he was deprived of the right to object to the assessment of fees.[18] Petitioner raised this claim on direct appeal and the OCCA found the claim had merit. The OCCA held:

---

[18] Under Oklahoma law:

> The sheriff shall give notice to the defendant of the actual costs owed before any court ordered costs are collected. The defendant shall have the opportunity to object to the amount of costs solely on the grounds that the number of days served is incorrect. If no objection is made, the costs may be collected in the amount stated in the notice to defendant.

Okla. Stat. tit. 22, § 979a(A).

> [T]he incarceration fee at issue was not assessed or even addressed at sentencing. The request for the assessment of such was first noted on the record the day following the sentencing when the request was filed by the Sheriff's Office. There is no indication that [Petitioner] had notice of this request or opportunity to object prior to April 9, 2013, when the Judgment and Sentence was filed. As [Petitioner] had no notice or opportunity to object to the imposition of incarceration fees, this case shall be remanded to the district court for a hearing on the imposition of the same is allowed by Section 979a(A).

*See* OCCA Summ. Op. at p. 8. Thereafter, on remand, the state district court entered an Order [Doc. No. 9-12] directing "that a new Judgment and Sentence be prepared and any reference to County Sheriff's Fees in the amount of $20,185.00 and D.A. Inmate Jail Fees in the amount of $2,180.00 will be deleted." *See id.*

Respondent is correct that the claim raised in Ground Eleven of the Petition is moot. The OCCA and the state district court provided Petitioner any relief to which he may be entitled. In his Reply, Petitioner concedes the claim is moot. *See* Reply at p. 11 ("This proposition was taken care of by the OCCA on remand to the district court[.]" Ground Eleven of the Petition, therefore, should be denied.

## XI.   **Ground Twelve – Cumulative Error**

Petitioner's final claim raised on direct appeal is that cumulative error deprived him of a fundamentally fair trial. Petitioner relies on the errors raised in Grounds One through Eleven.

### A.      **OCCA Decision**

The OCCA rejected this claim on direct appeal on the following basis:

> [U]pon review of [Petitioner's] claims for relief and the record in this case we conclude that although his trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require relief because they did not render his trial fundamentally unfair, taint the jury's verdict, or render sentencing unreliable. Any errors were harmless beyond a reasonable doubt, individually and cumulatively.

*See* OCCA Summ. Op. at p. 8 (citations omitted).

**B.     Clearly Established Federal Law**

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness."  *Matthews*, 577 F.3d at 1195 n.10 (*quoting Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008)); *accord Littlejohn*, 704 F.3d at 868.

**C.     Analysis**

As set forth above, the Court finds no constitutional error resulting from any of the first eleven grounds for relief upon which Petitioner relies to support his cumulative error claim.  There must be more than one error to conduct a cumulative error analysis.  *See Jackson v. Warrior*, 805 F.3d 940, 955 (10th Cir. 2015) ("[C]umulative-error in the federal habeas context applies only where there are two or more actual constitutional errors." (quotation omitted)).  Having found no constitutional errors, this ground for relief should be denied.

*DISCUSSION OF CLAIMS RAISED IN STATE POST-CONVICTION PROCEEDINGS*

**I.     Procedurally Barred Claims: Ground Thirteen – Ineffective Assistance of Trial Counsel and Ground Fourteen – Prosecutorial Misconduct**

Petitioner raised for the first time in post-conviction proceedings claims of ineffective assistance of trial counsel (Ground Thirteen) and prosecutorial misconduct (Ground Fourteen).  The OCCA denied the claims finding they were "raised on direct appeal and are therefore barred by the doctrine of res judicata."  *See* OCCA Order Affirming Denial of Post-Conviction Relief [Doc. No. 9-9] at p. 2.

Respondent contends the claims raised in Grounds Thirteen and Fourteen are procedurally barred from federal habeas review.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  This

Court agrees. In Ground Fifteen, however, Petitioner brings a stand-alone claim of ineffective assistance of appellate counsel for failing to raise these claims on direct appeal – necessitating a review of the merits of the claims. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal [the court] looks to the merits of the omitted issue.") (internal quotation marks and citation omitted). For the reasons discussed below, the underlying claims lack merit and the ineffective assistance of appellate counsel claim, therefore, should be denied. It necessarily follows that to the extent Petitioner contends ineffective assistance of appellate counsel is "cause" sufficient to overcome the procedural bar, he fails to demonstrate cause. *See, e.g. Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999) (concluding that petitioner's ineffective assistance of appellate counsel claim had no merit and could not, therefore, constitute cause to overcome his procedural default in state court).[19]

## II.     Claims Addressed on the Merits by the OCCA

### A.     Ground Fifteen – Ineffective Assistance of Appellate Counsel

Petitioner claims his appellate counsel was ineffective for failing to raise the following three claims on direct appeal: (1) trial counsel was ineffective for failing to have the inside of rubber gloves tested for "touch DNA"; (2) trial counsel was ineffective for not letting Petitioner testify at trial; and (3) prosecutorial misconduct due to the prosecutor (a) offering coached and perjured testimony of State's witness Alicia Stokes and (b) failing to let defense counsel know a

---

[19] As Respondent correctly points out, the Tenth Circuit treats differently the application of a procedural bar to claims of ineffective assistance of trial counsel. *See, e.g., English v. Cody*, 146 F.3d 1257 (10th Cir. 1998). However, under the circumstances of this case, where trial and appellate counsel differ and the ineffective assistance of trial counsel claim can be resolved on the trial record alone, it is proper to find such a claim procedurally barred. *Id*. at 1264-65. Even if the claims at issue arguably involve matters outside the trial record, as discussed infra, the Court has reviewed the merits of the claim and finds it lacks merit.

deal had been reached to drop pending charges against Dustin Stokes, the husband of Alicia Stokes. *See* Pet. at p. 23.

### 1.    OCCA Decision

Petitioner raised the claim of ineffective assistance of appellate counsel in post-conviction proceedings.  The OCCA affirmed the denial of the claim on the merits, applying the standard set forth in *Strickland*.  The OCCA found that the state district court had "looked to the merits of the issues [omitted from direct appeal] and concluded that appellate counsel's performance was not deficient."  *See* OCCA Order Affirming Denial of Post-Conviction Relief [Doc. No. 9-9] at p. 3.  The OCCA agreed with the district court's conclusion.  *Id.*

### 2.    Clearly Established Federal Law

Petitioner's ineffective assistance of appellate counsel claim is governed by *Strickland*, which, as set forth above, requires Petitioner to show "both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceedings – in this case the appeal – would have been different."  *Cargle*, 317 F.3d at 1196.

### 3.    Analysis

#### a.    Trial Counsel's Failure to Request DNA Testing

Petitioner claims trial counsel should have requested DNA testing with respect to a glove seized at the crime scene and found amongst methamphetamine lab materials.  Petitioner speculates that the glove contained "touch DNA" of a co-defendant.  Petitioner further speculates that testing to confirm the presence of such DNA would also establish his innocence.

Petitioner's ineffective assistance of trial counsel claim lacks merit. Petitioner can only speculate as to what the DNA testing would reveal. At best, the DNA testing – even assuming it yielded the results Petitioner claims – would only establish that one of Petitioner's co-defendants was also potentially involved in the manufacture of methamphetamine. It would not eliminate Petitioner as a charged party. Thus, this is not a case where DNA testing would prove Petitioner's innocence. Moreover, as discussed above, the OCCA deemed the circumstantial evidence of Petitioner's guilt "strong." *See* OCCA Summ. Op. at p. 3. Petitioner's speculative claim, therefore, fails to support the requisite showing that trial counsel's performance was either deficient or that he was prejudiced by such alleged deficient performance.

### b. Trial Counsel's Refusal to Allow Petitioner to Testify

Next, Petitioner claims trial counsel was ineffective for failing to allow Petitioner to testify at trial. Petitioner alleges that prior to trial and again at the time the defense presented its case, he told counsel he wanted to testify and deny any involvement in the conduct underlying the charges brought against him. Petitioner's claim is based solely on unsubstantiated allegations. He provides no evidentiary support. Significantly, the transcript of the jury trial proceedings is wholly silent with respect to Petitioner's alleged desire to testify.

Respondent aptly notes that the trial court asked on more than one occasion whether the defense had anything further to present. *See, e.g.*, Tr. Vol. II at pp. 165-66; Vol. III at pp. 4-5. Thus, Petitioner had opportunities to notify the trial court of his desire to testify. But Petitioner failed to make this desire known. Additionally, Petitioner does not address how or why his trial counsel's strategic decision to not put him on the stand constitutes either deficient performance or

prejudice.[20]  Under these circumstances, Petitioner's claim of ineffective assistance of trial counsel lacks merit.

### c.      Prosecutorial Misconduct

Petitioner next claims prosecutorial misconduct deprived him of a fundamentally fair trial. Petitioner claims the State allowed one of its witnesses, Alicia Stokes, to give "perjured and coached" testimony at trial.  As support for this claim, Petitioner contends Alicia Stokes and Dustin Stokes received favorable treatment in exchange for Mrs. Stokes' testimony.

Fundamentally, Petitioner's claim lacks merit because he fails to identify any particular testimony by Alicia Stokes that he deems to be false or perjured, nor does he set forth any facts to demonstrate the State knew that the testimony of this witness was false.  It is well established that "the mere use of perjured testimony without the prosecution's knowing it was perjured is not a denial of due process."  *Gay v. Graham*, 269 F.2d 482, 486 (10th Cir. 1959); *see also United States v. Agurs*, 427 U.S.97, 103 (1976).

To the extent Petitioner relies on the fact that Mrs. Stokes received a deferred sentence, this favorable treatment was explored during Mrs. Stokes testimony.  Tr. Vol. II at pp. 45-52. Moreover, Petitioner appears to claim a *Giglio*[21] violation based on the fact that after his trial, the State dropped charges against Dustin Stokes.  *See* Pet. at p. 22.  But Petitioner submits no evidence to show that the prosecution failed to disclose a promise to a government witness prior to trial that

---

[20] The strategic reasons for not having Petitioner take the stand are "obvious."  *See* Resp. at p. 83 n. 21.  Petitioner's multiple prior convictions for drug-related offenses could have been used for impeachment purposes.  And, just one year prior to Petitioner's trial, Petitioner's suspended sentences on multiple prior drug-related convictions had been revoked.  *See id.* (*citing* [Doc. No. 9-2] at pp. 62-67, Exhibit A, *Craighead v. State*, Case No. RE-2011-1004, OCCA Summ. Op. (Feb. 28, 2013)).  It was sound trial strategy not to introduce this evidence during first-stage proceedings.

[21] *Giglio v. United States*, 405 U.S. 150 (1972).

would affect the credibility of any witness. *Cf. Brown v. Rudek*, 533 F. App'x 805, 807 (10th Cir. 2013) ("[P]lea agreements entered into after trial are not evidence that such agreements were secretly reached before trial in violation of *Giglio*[.]") (*citing United States v. Molina*, 75 F.3d 600, 602 (10th Cir. 1996)).

Petitioner's conclusory allegations of prosecutorial misconduct are refuted by the record. He fails to establish that the testimony of Mrs. Stokes so infected the trial with unfairness as to make the resulting conviction a denial of due process or that the State's post-trial decision to drop charges against Dustin Stokes constitutes a *Giglio* violation. This claim, therefore, lacks merit.

In sum, applying AEDPA deference to the OCCA's post-conviction denial of Petitioner's ineffective assistance of appellate counsel claim, the record demonstrates that Petitioner fails to meet the heavy burden required to establish a right to habeas relief. Each of the underlying claims lacks merit for the reasons discussed above. Petitioner fails to establish the OCCA's determination of the ineffective assistance of appellant counsel issue was contrary to or an unreasonable application of *Strickland* under the AEDPA's doubly deferential standard. Accordingly, Petitioner's claim of ineffective assistance of appellate counsel raised in Ground Fifteen of the Petition should be denied.

### III.    Ground Sixteen – Violation of Due Process and Equal Protection Rights Based on State Courts' Refusal to Rule on Motion for DNA Testing

As his final ground for relief, Petitioner claims his due process and equal protection rights have been violated because neither the state district court nor the OCCA would rule on his motion for DNA testing. In support, Petitioner alleges that on March 9, 2015, he filed the motion, together with an application for post-conviction relief, before the state district court. He claims the state

district court refused to address the motion.[22]  Petitioner filed an appeal to the OCCA.  On June

30, 2015, the OCCA affirmed the district court's denial of post-conviction relief.  With respect to

the motion for DNA testing, the OCCA stated:

> [T]he record before this Court does not reflect that this request has been addressed
> by the District Court; therefore, it is not proper for review by this Court.  If
> Petitioner seeks DNA testing pursuant to the Post-Conviction DNA Act, then
> proper application must be made as set forth at 22 O.S. 2011, §§ 1373, *et seq*.

*See* OCCA Order Affirming Denial of Post-Conviction Relief and Denying Petitioner's Motion to

Expand the Record [Doc. No. 9-9] at p. 4.  Petitioner did not seek further relief in the state courts

but proceeded to file the instant Petition for habeas relief.

Respondent contends the claim raised in Ground Sixteen is "technically unexhausted," but

that "this is a situation where the circumstances warrant a determination on the merits rather than

application of Oklahoma's procedural bar or dismissal pending exhaustion."  *See* Resp. at p. 87.

As to the merits, Respondent contends the claim raised in Ground Sixteen fails to raise a colorable

federal claim but instead concerns a matter of state law only.  *Id*. at p. 88.  Alternatively,

Respondent asserts Petitioner has failed to establish DNA testing would "'provide a reasonable

likelihood of more probative results,'" *see* Resp. at p. 88, *citing* Okla. Stat. tit. 22, § 1373.4(A)(4),

and, therefore, such testing does not support Petitioner's actual innocence."  *Id*. at p. 89.

---

[22] The state district court ruled only on the three claims raised in the application for post-conviction
relief.  *See* Order Denying Post-Conviction Relief [Doc. No. 9-6].  This Court further notes that
Petitioner's state court application raises only three claims for post-conviction relief: (1)
ineffective assistance of trial counsel for not requesting DNA testing of a rubber glove and refusing
to allow Petitioner to testify at trial; (2) prosecutorial misconduct for relying on perjured and
coached testimony of witness Alicia Stokes; and (3) ineffective assistance of appellate counsel for
not raising the ineffective assistance of trial counsel and prosecutorial misconduct claims on direct
appeal.  *See* Application for Post-Conviction Relief [Doc. No. 9-4].  But Petitioner also attached
to the application a document headed "Motion for DNA Testing."  *See id*.  The state district court
did not address the attached motion in its order denying post-conviction relief.

The Court finds denial of the claim is warranted but for reasons different than those asserted by Respondent. Petitioner's claim in Ground Sixteen is specific. He alleges his due process and equal protection rights have been violated by the state courts due to a purported refusal to consider his motion for DNA testing with respect to the rubber glove found at the crime scene. He states: "the trial court failed to rule on the motion for DNA testing as did the Oklahoma Court of Criminal Appeals therefore this Petitioner['s] due process has been violated and his equal treatment under the law[.]" *See* Pet. at p. 25. He further states: "[t]his is truly exculpatory evidence and the DNA testing needs to be done to prove Petitioner's innocence." *See id.*[23]

This Court, however, cannot grant the relief he requests. Petitioner's claim that the state courts' failure to rule on his motion constitutes an "abuse of discretion" raises an issue of state law only and is not cognizable in this habeas action. *See* supra, n. 5. To the extent Petitioner seeks an order directing the state courts to rule on his motion, this Court lacks such authority. *See Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) (holding that federal courts lack the "authority to issue . . . a writ to direct state courts or their judicial officers in the performance of their duties") (internal quotation marks omitted). Nor is the underlying claim for relief -- i.e., that DNA testing be conducted -- proper in an action seeking habeas corpus relief. *See Skinner v. Switzer*, -- U.S. --, 131 S.Ct. 1289, 1293 (2011) ("[A] postconviction claim for DNA testing is properly pursued in a § 1983 action"). Accordingly, the claim raised in Ground Sixteen is not cognizable in this habeas corpus proceeding.

---

[23] Petitioner does not bring any claim premised on *Brady v. Maryland*, 373 U.S. 83 (1963). He makes no allegation that the prosecution had exculpatory evidence that it refused to disclose. Instead, he seeks to discover exculpatory evidence, in the first instance, through his requested DNA testing.

**RECOMMENDATION**

It is recommended that the Petition [Doc. No. 1] be denied.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by July 5, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 14th day of June, 2017.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE